CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 08 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARKHAM ANDREW BURKE, | ) | CASE NO. 7:13CV00380 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, DIRECTOR, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Markham Andrew Burke, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his Roanoke County Circuit Court convictions and twenty-year sentence for abduction and sexual offenses related to the molestation of a minor, C.W. This court has carefully reviewed the parties' pleadings and the state court record, including the video transcript of the trial proceedings and the Supreme Court of Virginia's recent refusal to address the merits of Burke's claims of ineffective assistance of counsel on the grounds of procedural default. The court concludes that the motion to dismiss Burke's federal habeas claims as procedurally barred from review of the merits must be granted.

I.

Although the court has previously reviewed the procedural history in Burke's case, it offers a summary of that history here. Burke pleaded not guilty in the Roanoke County Circuit Court to charges of aggravated sexual battery, taking indecent liberties, and abduction with intent to defile. He stood trial before a jury on November 23, 2009, represented by court-appointed counsel, Valeria Cook, Esq.

The alleged victim, C.W., was the central witness for the Commonwealth and described Burke's offense conduct. The Virginia Court of Appeals summarized her testimony as follows:

> [C.W.] testified that she visited her grandparents' home for a family gathering during the summer of 1998. At one point, [C.W.] left the group and went downstairs alone to use the bathroom. As [C.W.] was leaving the bathroom, she was confronted by [Burke], who was her uncle. [Burke] pushed [C.W.] back into the bathroom. [C.W.] pushed [Burke] away and grabbed the panels of the bathroom door. However, [Burke] grabbed [C.W.] again and lifted her onto the counter beside the sink. [Burke] closed the door. [Burke] then rubbed [C.W.] on her vagina over her clothes. [Burke] pulled out his penis and began masturbating. [Burke] asked [C.W.] to touch his penis, but she did not. [C.W.] jumped off the counter and fled upstairs to her family. [C.W.] did not report the incident to anyone until 2009.

(Va. Ct. App. Opinion 3, Aug. 26, 2010, ECF No. 1-1.)

> [T]he prosecutor asked [C.W.] why she came forward with the allegations against [Burke] in 2009 for events that occurred in 1998. [C.W.] responded that she learned in 2009 that her cousin had made an allegation against appellant regarding sexual misconduct. [C.W.] said she felt she had to "do something" and did not want her cousin to have to testify by herself.

(Id. 1.) Cook raised no objection to the question or C.W.'s testimony and, on cross examination, questioned C.W. further about her conversation with her cousin.

After the Commonwealth rested, Cook asked the trial judge to instruct the jurors not to consider C.W.'s testimony about her cousin's allegations against Burke. The prosecutor objected, noting that Cook had been provided pretrial access to summaries of police interviews in which C.W. had stated that she reported the incident in January 2009, because her cousin had recently confided that Burke had molested the cousin as a child. The trial judge asked Cook if she was seeking any other remedial measure, but Cook asked only for a curative instruction. The trial judge granted her request and instructed jurors not to attribute any weight or significance to the allegations by C.W.'s cousin and to disregard them as irrelevant to the proceeding. In her closing, Cook again referred to C.W.'s conversation with her cousin.

After lengthy deliberations and an Allen charge by the trial judge, jurors found Burke guilty on all three counts. The trial judge denied Cook's post-verdict motion for a mistrial based

2

on C.W.'s testimony about her cousin's allegations against Burke. Following the recommendations of the jury, the Court sentenced Burke to a total active sentence of twenty years in prison. On appeal, Burke challenged the propriety of the trial court's denial of his motion for a mistrial, among other things. In dismissing the appeal, the Court of Appeals of Virginia ruled, however, that this claim was barred from review under Supreme Court of Virginia Rule 5A:18, because Cook had not moved for a mistrial at the time C.W. made the objectionable comments. Through newly retained counsel, Stuart J. Pearson, Burke petitioned the Supreme Court of Virginia for review. In June 2011, however, the Court refused his petition for appeal.

Pearson then filed a timely petition for a writ of habeas corpus on Burke's behalf in the Roanoke County Circuit Court, claiming that trial counsel was ineffective by:

A) "failing to object to clearly objectionable testimony presented by the victim";

B) "fail[ing] to effectively voir dire the jury pool";

C) "fail[ing] to interview witnesses who would have aided in cross-examination of the victim";

D) "fail[ing] to effectively discuss and review the [Commonwealth's] plea offer"; and

E) on appeal, "failing to invoke either the good cause or meet the ends of justice exceptions" to Rule 5A:18 to allow the Court of Appeals to reach Question I in Burke's petition for appeal.[1]

Respondent moved to dismiss, based on an affidavit from trial counsel. In response to Burke's allegations in claim A, Cook stated:

> When the victim answered my question about why now did she come
> forward with this allegation over a decade after the alleged incident, her answer

---

[1] Question I in the petition for appeal challenged the efficacy of the trial court's cautionary instruction and the failure to grant a mistrial.

3

> was a total surprise when she claimed it was because her cousin had made a similar allegation.
>
> Counsel was then in the position of making an immediate objection or trying not to make too much of the comment so it would not be burned into the mind of the jury members. Defendant had not yet been found not guilty of the charges made by the cousin.

(V. Cook Aff., at 1, ECF No. 13-4.). In a 13-page final order dated May 15, 2013, without an evidentiary hearing, the circuit court denied Burke's petition. The Court expressly found Cook's decisions not to object contemporaneously to C.W.'s testimony and to seek a curative instruction were reasonable trial strategies. The Court also found that Burke had failed to demonstrate a reasonable probability that a contemporaneous objection to C.W.'s testimony would have resulted in a different outcome, given the lack of evidence that the jury failed to follow the curative instruction. Thus, the Court ruled that Burke had not established both deficient performance by counsel and resulting prejudice, as required under Strickland v. Washington, 466 U.S. 668 (1984).

At this point, Burke had until June 15, 2013, to note an appeal to the Supreme Court of Virginia from the circuit court's final order. See Va. Sup. Ct. R. 5:14. Inexplicably, Pearson did not advise him to do so, however. He sent Burke a copy of the circuit court's final order by letter dated May 21, 2013, stating:[2]

> Unfortunately, Judge Swanson has ruled against you. In my opinion, you have now exhausted all available relief opportunities in the Commonwealth of Virginia. You may have the right to file for Writ of Habeas corpus in Federal Court, but I am not familiar with that particular process. Now that the services for which I was retained have been completed, I will close my file. If you intend to pursue a Federal Habeas Corpus Petition, please let me know if you need any of the documents in my file and I will gladly forward them to you.

---

[2] Burke submitted copies of Pearson's letters about habeas corpus proceedings as exhibits to his § 2254 petition. Because the respondent has not contested the letters' authenticity, the court includes them as part of this factual summary.

4

(Pet. Attach. D3, ECF No. 1-14.)[3] Neither Pearson nor Burke filed an appeal to the Supreme Court of Virginia.

Burke, proceeding without counsel, filed this § 2254 petition in August 2013, attacking the validity of his conviction on substantially the same five grounds as raised in his state habeas petition, designated as Grounds One through Five in the federal petition. In support of his federal petition, however, Burke submitted numerous affidavits that Pearson did not present in support of the circuit court petition.[4]

Respondent moved to dismiss the § 2254 petition as procedurally defaulted for purposes of federal habeas review, because Burke had not appealed to the Supreme Court of Virginia after the circuit court denied his state habeas petition. However, Burke presented the evidence of Pearson's advice that federal habeas proceedings were his next available post-conviction remedy, erroneous advice that caused Burke to forego the state court habeas appeal. This court appointed counsel for Burke, and the parties filed additional memoranda.

This court found Burke's predicament to be unique: as a direct result of his attorneys' alleged omissions or misadvice, Burke had lost two opportunities for appellate court review of the trial court's proceedings to determine whether he had received a constitutionally adequate trial. His federal habeas attorney advanced an argument by which Burke could potentially be granted permission to receive further state court review of his habeas claims. While this court

---

[3] By letter dated July 29, 2013, after the time for appeal had passed, Pearson told Burke, "the Commonwealth of Virginia allows a Habeas petition to be filed in either Circuit Court or the Supreme Court. In my opinion we were more likely, in this case, to get a favorable ruling from Judge Swanson so that is where I filed. Even though it was not filed through the Supreme Court, Federal Court should still accept it." (Pet. Attach. D, ECF No. 1-14.)

[4] Burke asserts that he had informed Pearson of this additional evidence, and Pearson chose not to submit it with the state petition. However, Burke does not demonstrate any ground on which this court could consider evidence not submitted to the state court in support of his claims there. See Cullen v. Pinholster, 562 U.S.___, ___, 131 S. Ct. 1388, 1398 (2011) (limiting federal habeas court reasonableness review under § 2254(d) to "the record before the state court") (omitting internal quotations and citations). Therefore, the court will not list in this summary the contents of the attachments to his federal petition.

5

took no position on whether the state courts would or should grant Burke such additional review, the court stayed and held in abeyance this federal habeas action to allow Burke to seek further state court review.

Burke, through his federal habeas attorney, filed a second petition for a writ of habeas corpus, this time in the Supreme Court of Virginia. (See ECF No. 34.) His petition asserted these claims: 1) trial counsel provided ineffective assistance in failing to object and move for a mistrial in a timely manner when C.W. testified about her female cousin's allegations; and 2) state habeas counsel provided ineffective assistance when he failed to exhaust Burke's state habeas remedies. Burke's petition contended that the attorneys' professional deficiencies violated the Sixth Amendment and corresponding due process safeguards in the Virginia Constitution. As relief, Burke sought a belated habeas appeal. Respondent moved to dismiss. The Supreme Court of Virginia dismissed Burke's habeas petition by order entered May 22, 2015, which read:

> Upon consideration of the petition for a writ of habeas corpus filed November 9, 2014, the Court finds that the petition was not timely filed. Code § 8.01-654(A)(2). In addition, the Court is of the opinion that the writ should not issue as no writ shall be granted on the basis of any allegation the facts of which the petitioner had knowledge at the time of filing any previous petition, Code § 8.01-654(B)(2), and habeas corpus does not lie to correct errors committed by counsel in a prior habeas corpus proceeding, Howard v. Warden, 232 Va. 16, 18, 348 S.E.2d 211, 213 (1986). It is therefore ordered that the petition be dismissed.

(Status Report Attach., ECF No. 32.) Burke did not file a petition for a writ of certiorari in the United States Supreme Court, nor did he or respondent file any additional memoranda addressing his federal habeas claims. Thus, the court finds the matter to be ripe for decision.

6

## II.

### A. Procedural Default

Well established principles of comity between state and federal courts "dictate that the state be given the first opportunity to correct constitutional errors in criminal proceedings." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Ex parte Royall, 117 U.S. 241, 251-53 (1886)). Accordingly, "[a] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Id. (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). If petitioner has not "fairly presented" his claim to the state's highest court, but would now be barred from doing so under an independent and adequate state rule of procedure,[5] that claim is considered exhausted. Id. (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). However, petitioner's procedural default under state law bars a federal habeas court from review of his claim on the merits, absent a showing of cause for the default and prejudice from the alleged constitutional error.[6] Gray, 518 U.S. at 162.

Virginia law vests habeas corpus jurisdiction in either the circuit court or the Supreme Court of Virginia:

> The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority.

---

[5] A state procedural rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

[6] A § 2254 habeas petitioner's colorable claim of actual innocence can also serve as a "gateway" to secure the adjudication of his otherwise defaulted constitutional claims. Schlup v. Delo, 513 U.S. 298, 315 (1995). To open this procedural gateway, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of [some] new evidence." Id. at 327. Burke does not assert a colorable showing of actual innocence under the Schlup standard so as to open that gateway to consideration of his defaulted claims. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (finding that as petitioner bears burden to raise cause and prejudice or actual innocence, a court need not consider either if not asserted by petitioner).

7

Va. Code Ann. § 8.01-654(A)(1). If a prisoner chooses to file his habeas petition in the circuit court and is denied relief, he may appeal that disposition to the Supreme Court of Virginia. Va. Code Ann. § 17.1-406(B) ("appeals lie directly to the Supreme Court . . . from a final decision, judgment or order of a circuit court involving a petition for a writ of habeas corpus . . ."). The notice of such a habeas appeal must be filed within thirty days from the circuit court's order. Va. Sup. Ct. Rule 5:9(A).

Because Burke failed to pursue the available appeal to the Supreme Court of Virginia after the circuit court denied habeas relief on his ineffective assistance claims, he did not properly exhaust his claims as required by § 2254(b). Moreover, the time limit under Rule 5:9(A) bars him from pursuing a habeas appeal now. It is well established that the time limit in Rule 5:9(A) is an independent and adequate state procedural ground barring not only state habeas relief, but also federal habeas review. See Coleman v. Thompson, 501 U.S. 722, 736 (1991) (holding that Virginia prisoner who failed to note habeas appeal to Supreme Court of Virginia within thirty days of circuit court's denial of habeas relief, based on attorney error, was procedurally barred from federal court review under § 2254). Because Burke's Claims Two, Three, Four and Five in the federal petition have never been presented to the Supreme Court of Virginia, these claims are unexhausted, but procedurally defaulted under Rule 5:9(A); based on that default, Burke is procedurally barred from federal review on the merits of these habeas claims, absent a showing of cause and prejudice. Gray, 518 U.S. at 162.

The ineffective assistance issue in Claim One of Burke's federal habeas petition, challenging trial counsel's failure to object to C.W.'s testimony about her cousin's accusations, is exhausted. Burke presented it to the Supreme Court of Virginia in his second habeas petition. Such an exhausted habeas claim is procedurally barred from federal merits review, nonetheless,

8

if "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006).

The Supreme Court of Virginia dismissed Burke's second habeas petition under two state procedural rules: Va. Code Ann. § 8.01-654(A)(2), the statute of limitations for habeas petitions, and Va. Code Ann. § 8.01-654(B)(2), the successive petitions bar. Courts have found both of these procedural rules to be independent and adequate state law grounds barring federal habeas relief. See, e.g., Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990). "Claims [thus] forfeited under state law may support federal habeas relief only if [petitioner] demonstrates cause for the default and prejudice from the asserted error." House v. Bell, 547 U.S. 518, 536 (2006).

### B. No Showing of Cause for the Default

To show cause for his procedural defaults, Burke must identify "something external to the petitioner, something that cannot fairly be attributed to him [that] . . . impeded [his] efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753 (internal quotation marks and citations omitted). For example, a "factual or legal basis for a claim [that] was not reasonably available" or interference from officials that somehow "made compliance impracticable" could qualify as such external factors. Id. Uninformed or inadvertent errors by counsel during trial or appeal are not external factors under this definition of cause, because the attorney is the petitioner's agent when acting or failing to act, . . . and the petitioner must "'bear the risk of attorney errors.'" Id. However, during trial and appeal, "[a]ttorney error that constitutes ineffective assistance of counsel is cause" for a procedural default. Id. at 753-54 (emphasis added). "[I]t is not the gravity of the attorney's error that matters," but rather, as "a violation of petitioner's right to counsel . . . the error must be seen as an external factor, i.e.,

9

imputed to the State." Id. at 754 (internal quotation marks and citation omitted, emphasis added).

In state post-conviction proceedings, petitioner has no constitutional right to representation by counsel. Id. at 752 (citations omitted). Therefore, as a general rule, petitioner "cannot claim constitutionally ineffective assistance of counsel in such proceedings" as cause for a procedural default. Id. at 752. Thus, when habeas counsel, as petitioner's agent, makes an error that leads petitioner to miss his opportunity to pursue his state habeas appeal, "[t]his error cannot be constitutionally ineffective; therefore [petitioner] must bear the risk of attorney error that results in a procedural default." Id. at 752-53 (internal quotation marks omitted).

Recently, the Supreme Court has recognized two narrow exceptions to this Coleman rule that errors by post-conviction counsel cannot serve as cause for default. Neither exception applies to provide cause for Burke's defaults.

In Martinez v. Ryan, __U.S.__, __, 132 S. Ct. 1309 (2012), the Supreme Court held that attorney errors during an "initial-review collateral proceeding" can constitute "cause" to excuse a procedural default and permit federal habeas review if four conditions are met:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [ claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, __U.S.__. 133 S. Ct. 1911, 1918 (2013) (emphasis in original) (quoting Martinez, 132 S. Ct. at 1318)). "Virginia requires prisoners to bring ineffective assistance-of-trial-counsel claims, for the first time, in state collateral proceedings." Gray v. Pearson, 526 F. App'x 331, 334 (4th Cir. 2013) (citing Johnson v. Commonwealth, 529 S.E.2d 769, 781 (2000)).

Burke's federal habeas counsel concedes that the Martinez exception cannot help Burke excuse the default of his ineffective assistance claims. Burke's "initial-review collateral proceeding" was his circuit court habeas action, where he raised his claims that his trial counsel was ineffective. The circuit court reviewed those claims on the merits, and its final order on May 15, 2013, denying relief on the record, terminated Burke's initial-review proceeding. Only after that review concluded did the critical procedural default occur in his case, when neither Pearson nor Burke filed a habeas appeal to the Supreme Court of Virginia. The Court expressly found that counsel's failure to pursue a habeas appeal is not an act that occurs during the initial-review proceeding so as to fall within the Martinez exception. 132 S. Ct. at 1320.

The other limited exception to the Coleman rule was recognized in Maples v. Thomas, 565 U.S. __, __, 132 S. Ct. 912 (2012). The Court did not abandon Coleman:

> . . . Negligence on the part of a prisoner's postconviction attorney does not qualify as "cause" . . . . Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause. We do not disturb that general rule.

132 S. Ct. at 922 (citing Coleman, 501 U.S. at 753-54). However, refining a discussion of this subject in Holland v. Florida, 560 U.S. 631 (2010),[7] the Maples Court held it to be "[a] markedly

---

[7] In Holland, the Court reversed the Eleventh Circuit's rule that
> when a petitioner seeks to excuse a late filing on the basis of his attorney's unprofessional conduct, that conduct, even if it is "negligent" or "grossly negligent," cannot "rise to the level of egregious attorney misconduct" that would warrant equitable tolling [of the federal habeas limitation period under 28 U.S.C. § 2244(d)] unless the petitioner offers "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth."

560 U.S. at 634. "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotations and citation omitted). Habeas counsel's alleged misconduct in the Holland case included not filing the federal petition on time despite prisoner's many admonitions on the importance of doing so, not doing the research necessary to ascertain the filing deadline despite petitioner's letters identifying the applicable legal rules, failing to provide petitioner with information he had requested so that he could self-monitor his case, and failing to communicate with petitioner over a period of years. Id. at 652-54. The Court noted that counsel's alleged errors violated the "fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." Id. at 652-53 (emphasis added). The Court then remanded the habeas proceedings for determination of whether the habeas

11

different situation . . . when an attorney <u>abandons his client without notice</u>, and thereby occasions the default." Id. (emphasis added). Once the attorney has "severed the principal-agent relationship, [he] no longer acts, or fails to act, as the client's representative." Id. at 922-23. The Court recognized that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he <u>lacks reason to believe</u> his attorney[ ] of record, in fact, [is] not representing him." Id. at 924 (emphasis added). Following Justice Alito's reasoning in his concurring opinion in Holland,[8] the Maples Court "homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney ha[s] essentially abandoned his client," finding that the petitioner in Holland "alleged abandonment 'evidenced by counsel's <u>near-total failure to communicate</u> with petitioner or to respond to petitioner's many inquiries and requests over a period of several years.'" Maples, 132 S. Ct. at 923 (emphasis added) (quoting Holland, 560 U.S. at 659).

Petitioner Maples, a death row inmate, filed a state habeas petition in Alabama state court with the assistance of two out-of-state pro bono attorneys. Id. at 916. At some point after the state filed its motion to dismiss, Maples' attorneys left their law firm to pursue new employment that precluded their further representation of Maples. Id. The attorneys both failed to move for leave to withdraw or to notify Maples or opposing counsel that they were no longer able to represent Maples. Id. When the trial court later granted the motion to dismiss Maples' petition,

---

attorney's conduct rose to the level of an "extraordinary circumstance" of a kind sufficient to permit equitable tolling of the § 2244(d) filing period. Id. at 653.
  Although Holland involved equitable tolling of the limitation period for federal habeas petitions, while Maples dealt with default of state procedural rules, the Court in Maples found "no reason . . . why the distinction between attorney negligence and attorney abandonment should not hold in both contexts." 132 S. Ct. at 923 n.7.
  [8] Justice Alito stated: "Although attorney negligence, however styled, does not provide a basis for equitable tolling," tolling would be warranted "if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner," such as when the petitioner proved "that his attorney essentially 'abandoned' him." Holland, 560 U.S. at 659.

12

the clerk mailed the notice of dismissal to Maples' two attorneys of record at their former law firm address; personnel at the firm returned the envelope to the court, unopened. Id. at 917. "With no attorney of record in fact acting in Maples' behalf, the time to appeal ran out." Id. Unaware that he was effectively without representation and ignorant of the court's dismissal of the petition, Maples did not file a habeas appeal to the Alabama Supreme Court within the time limits under the applicable appellate rules and thus procedurally defaulted his claims for purposes of federal habeas review. Id.

The Supreme Court granted certiorari on the sole question of "whether, on the extraordinary facts of Maples' case, there [was] 'cause' to excuse the default." Id. (emphasis added). The Court concluded that

> [t]hrough no fault of his own, Maples lacked the assistance of any authorized attorney during the 42 days Alabama allows for noticing an appeal from a trial court's denial of postconviction relief. As just observed, he had no reason to suspect that, in reality, he had been reduced to pro se status. Maples was disarmed by extraordinary circumstances quite beyond his control. He has shown ample cause, we hold, to excuse the procedural default into which he was trapped when counsel of record abandoned him without a word of warning.

Id. at 927 (emphasis added).

Courts applying the Maples exception have emphasized as a key element the client's lack of notice that he has no functioning attorney and have continued to hold that procedural defaults precipitated by the attorney's negligent errors, "however egregious," if committed while the lawyer-client relationship is still intact, are still governed by the Coleman rule; such errors are imputable to the lawyer's client and therefore, cannot serve as cause to lift any procedural default bar that results from those errors. See, e.g., Cadet v. Florida Dep't of Corr., 742 F.3d 473, 484 (11th Cir. 2014) (finding no abandonment under Maples exception, despite attorney's grossly negligent misinterpretation of filing deadline, lack of basic research on that issue, and

13

misleading advice that caused default of the federal filing deadline, where attorney "did not fail to keep his client abreast of key developments in his case, did not ignore his client's inquires or concerns, and did not sever nearly all communication with his client for a period of years—or even for months or even for weeks"); Dansby v. Hobbs, 766 F.3d 809, 828 (8th Cir. 2014), cert. denied sub nom. Dansby v. Kelley, __ U.S. __, 136 S. Ct. 297 (2015) (rejecting Maples exception for attorney's alleged conflict of interest, finding "this case is a long way from the 'veritable perfect storm of misfortune,' 132 S. Ct. at 929 (Alito, J., concurring), that befell the petitioner in Maples, who missed the filing deadline for a notice of appeal because he was left without any functioning attorney of record and had no reason to suspect that he had been reduced to pro se status") (emphasis added).

Burke asserts that the court may address his defaulted claims on the merits under the Maples exception, because Pearson abandoned him on May 21, 2013 by ending his representation before filing a notice of appeal. On that date, Pearson sent Burke a copy of the circuit court's order denying Burke's habeas petition, told Burke he had exhausted state court remedies, and that Pearson had finished what he was hired to do. Burke claims that Pearson's letter affirmatively misled him to believe that he had no right to appeal the circuit court's order and that he had completed all steps necessary to preserve his claims for federal habeas review. He argues that because Pearson gave him this inaccurate information and then "abrupt[ly]" ended the attorney-client relationship, he was "disarmed" from protecting his own rights by filing a habeas appeal. (Pet. Mem. 13-14, ECF No. 22.) Burke asserts, "A postconviction lawyer for a state prisoner whose parting statement to his former client is that the prisoner need not have his habeas corpus petition reviewed by the Supreme Court of Virginia as a condition precedent to seeking federal review is no longer functioning as a postconviction counsel." (Id. at

14) (citing Maples, 132 S. Ct. at 923). He argues that these events constitute "extraordinary circumstances beyond his control" that occasioned his default and, under Maples, provide grounds for cause to excuse that default.

The court cannot find that Burke has alleged extraordinary circumstances supporting invocation of the Maples exception to default, based on Pearson's conduct. Pearson did not fail to communicate with Burke or end his representation of his client without notice. Within a week of the circuit court's final order, Pearson informed Burke that the circuit court had ruled against him, that the attorney-client employment contract was complete, and that Pearson would not be preparing any future pleadings for Burke. At that point, Burke knew that Pearson would be taking no further action on his behalf as counsel. Burke still had three weeks to research his options on his own and file a timely pro se appeal or to engage another attorney to assist him. Moreover, even after saying he had completed the duties for which he was retained, Pearson offered advice about future options and stated his willingness to provide Burke with documents. Unlike Maples, Burke suffered from no lack of awareness of his pro se status that placed his compliance with the state's procedural rule out of his control.

Unquestionably, Pearson gave Burke erroneous legal advice in the letter of May 21, 2013. Pearson apparently drew an incorrect inference from the terms of the Virginia habeas statute, § 8.01-654(A)(1), that state habeas proceedings commenced and concluded either in the circuit court or in the Supreme Court of Virginia. With basic legal research on the exhaustion requirement in § 2254(b), however, Pearson should have known that no federal habeas relief could be granted on a claim not first presented to the highest court with habeas jurisdiction in the sentencing state. See O'Sullivan, 526 U.S. at 842. Pearson should also have reviewed Virginia's appeal statute, § 17.1-204(b), which plainly reflects the availability of a habeas appeal to the


14) (citing Maples, 132 S. Ct. at 923). He argues that these events constitute "extraordinary circumstances beyond his control" that occasioned his default and, under Maples, provide grounds for cause to excuse that default.

The court cannot find that Burke has alleged extraordinary circumstances supporting invocation of the Maples exception to default, based on Pearson's conduct. Pearson did not fail to communicate with Burke or end his representation of his client without notice. Within a week of the circuit court's final order, Pearson informed Burke that the circuit court had ruled against him, that the attorney-client employment contract was complete, and that Pearson would not be preparing any future pleadings for Burke. At that point, Burke knew that Pearson would be taking no further action on his behalf as counsel. Burke still had three weeks to research his options on his own and file a timely pro se appeal or to engage another attorney to assist him. Moreover, even after saying he had completed the duties for which he was retained, Pearson offered advice about future options and stated his willingness to provide Burke with documents. Unlike Maples, Burke suffered from no lack of awareness of his pro se status that placed his compliance with the state's procedural rule out of his control.

Unquestionably, Pearson gave Burke erroneous legal advice in the letter of May 21, 2013. Pearson apparently drew an incorrect inference from the terms of the Virginia habeas statute, § 8.01-654(A)(1), that state habeas proceedings commenced and concluded either in the circuit court or in the Supreme Court of Virginia. With basic legal research on the exhaustion requirement in § 2254(b), however, Pearson should have known that no federal habeas relief could be granted on a claim not first presented to the highest court with habeas jurisdiction in the sentencing state. See O'Sullivan, 526 U.S. at 842. Pearson should also have reviewed Virginia's appeal statute, § 17.1-204(b), which plainly reflects the availability of a habeas appeal to the

15

Case 7:13-cv-00380-GEC-RSB Document 35 Filed 02/08/16 Page 15 of 17 Pageid#: 481

Supreme Court of Virginia, as do numerous federal habeas court decisions. Pearson's failure to conduct such fundamental, background research was negligent, perhaps even grossly negligent, lawyering.

Pearson committed these errors and omissions, however, and communicated them to Burke, while serving as Burke's retained attorney, with the consequent agency relationship intact. Thus, his errors fall squarely under the Coleman rule: because Pearson was still Burke's agent at the time of his errors, Burke bore the risk that such negligent errors would occur and result in default of state procedural rules; Burke must also "bear[ ] the risk in federal habeas for all attorney errors made in the course of the representation." 501 U.S. at 754 (citations omitted). "[A] claim of attorney error, however, egregious," does not constitute "essential[ ] abandon[ment]" under the Maples cause exception if the error is committed during the agency relationship. 132 S. Ct. at 923. Because Pearson's conduct did not constitute abandonment as required for Burke to avail himself of the Maples exception, this court is procedurally barred from review of Burke's federal habeas claims on the merits. Therefore, the court will grant the motion to dismiss.

## III.

In conclusion, for the stated reasons, the court will grant the motion to dismiss Burke's habeas claims as procedurally barred from federal review. Given this disposition, the court finds no basis to grant Burke's requests to engage in discovery, to supplement his argument on the merits of his claim, or to conduct an evidentiary hearing. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner.

ENTER: This 8th day of February, 2016.

/s/ Glen Conrad
Chief United States District Judge